UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GERALD KAYE,

                                        Plaintiff,                          Case No. 12-CV-4364 (KMK)

        -against-                                                          OPINION AND ORDER

ORANGE REGIONAL MEDICAL CENTER,

                                        Defendant.

Appearances:

Louis Ginsberg, Esq.
Law Firm of Louis Ginsberg, P.C.
Roslyn, NY
*Counsel for Plaintiff*

George Felix Brenlla, Esq.
Clifton Budd & DeMaria, LLP
New York, NY
*Counsel for Defendant*

Sheryl A. Orwel, Esq.
Office of University Counsel, Weill Cornell Medical College
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

        Gerald Kaye ("Plaintiff"), individually and on behalf of a purported class action, brings

this suit against his employer, Orange Regional Medical Center ("Defendant"), alleging that

Defendant failed to pay him and other, current and former nonexempt respiratory therapists for

work they performed during rest periods and meal breaks.  Plaintiff contends that Defendant

consequently failed to compensate employees for all the hours that they spent working, including

overtime hours.  Plaintiff's claims arise under various provisions of the N.Y. Labor Law and

corresponding N.Y. Department of Labor regulations.  Defendant seeks dismissal of Plaintiff's

claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) as preempted under

Section 301 of the Labor Management Relations Act ("LMRA") ("§ 301").  For the reasons

stated herein, Defendant's Motion is denied.

## I. Background

### A. Facts

Except where otherwise noted, the following facts are drawn from Plaintiff's Complaint

and are taken as true for the purposes of resolving the instant Motion.[1]

Plaintiff is currently employed by Defendant as a respiratory therapist, an hourly wage

worker, and has been so employed since in or around August 2002.  (Compl. ¶ 2.)  Defendant is

a nonprofit corporation which, upon Plaintiff's belief, has, at all relevant times, employed at

least forty hourly wage respiratory therapists.  (*Id.* ¶ 3.)  Plaintiff alleges that "[a]t the repeated

requests of [Defendant], Plaintiff[] and . . . his fellow respiratory therapists worked through meal

and rest periods without compensation.  Plaintiff has worked an average of 1.5 hours per week

during meal and/or rest periods without compensation throughout his employment."  (*Id.* ¶ 6.)

---

[1] Plaintiff originally filed the Complaint in New York Supreme Court, Orange County, in May 2012.  Defendant timely removed this action to this Court on June 4, 2012, pursuant to 28 U.S.C. §§ 1441(b), (c), claiming that this Court possessed federal question jurisdiction, "because Plaintiff has asserted claims arising under the laws of the United States that are completely preempted . . . . by Section 301 of the [LMRA]," (Notice of Removal of Action ¶ 3 (Dkt. No. 1)). *See Vera v. Saks & Co.*, 335 F.3d 109, 113 (2d Cir. 2003) (per curiam) (describing that defendant properly removed plaintiff's putative class action asserting N.Y. Labor Law claims against her employer, because "the District Court had original jurisdiction over the case based on section 301 of the [LMRA]").  Where the Court quotes or refers to the Complaint, the Court will directly cite Plaintiff's state court Complaint, which is Exhibit A to Defendant's Notice of Removal.

Defendant "automatically . . . deducted at least one-half hour of time per day from each respiratory therapist[']s pay check, regardless of whether the employee worked through the meal or rest period." (*Id.*) Plaintiff also alleges that Defendant "failed to pay Plaintiff and the other respiratory therapists a minimum wage for all hours worked, as well as, time and one half their regular rate of pay for hours worked over forty [hours] in a work week." (*Id.* ¶ 7.) "Had [Defendant] compensated [hourly wage respiratory therapists] for all [their] actual hours worked, [they] would have accumulated additional time worked in excess of 40 hours per week, for which they would have had to have been paid overtime or time and one-half." (*Id.*) Plaintiff admits that "[p]reviously"—without specifying when—"a complaint was filed with the United States Department of Labor regarding the uncompensated work performed during required meal and/or rest periods. In response . . . Defendant paid the respiratory therapists some but not all of the unpaid wages owed." (*Id.* ¶ 8.)

Although neither explicitly mentioned nor indirectly referenced in the Complaint, Defendant, in support of its motion, has relied on a collective bargaining agreement ("CBA") between Defendant and 1199SEIU United Healthcare Workers East ("the Union"), the latter of which represents Plaintiff. It appears that the current CBA is operative from "January 1, 2008 through April 30, 2015." (Aff. of George F. Brenlla in Support of Def.'s Mot. To Dismiss ("Brenlla Aff."), Ex. B ("CBA") (Dkt. No. 7).)[2] Defendant cites several provisions of the CBA as relevant to Defendant's Motion. First, Article X of the CBA sets forth the "Wages and Minimums" due to various classifications of employees, such as "Service, Clerical, [and] Technical Employees," the classification that includes hourly wage respiratory therapists. (CBA

---

[2] The extent to which the Court may properly consider the CBA, if at all, in resolving the pending motion is discussed below.

Art. X ¶ 1.)  Pursuant to the CBA, these workers received a "lump sum bonus" as a "one-time

payment" on or around July 1, 2008, and the hourly rates of all employees were increased

"across[] the[] board."  (*Id.* Art. X ¶¶ 1(a), 2(a).)  The CBA also states that the minimum pay

rates for each type of employee "shall be contained in a stipulation (Stipulation II) between

[Defendant] and the Union," which Stipulation is "annexed" to the CBA.  (*Id.* Art. X ¶ 2(b)(3);

*see also id.* Stipulation II, at 119–21.)

Second, Articles XI and XIII set forth the "Hours" and "Overtime" definitions and

requirements for employees.  Article XI states, in relevant part, that "[t]he regular work

week . . . shall consist of the number of hours per week regularly worked by . . . [e]mployees as

of July 1, 2003. . . . Employees shall receive two (2) days off in each full calendar week except

in the event of overtime."  (*Id.* Art. XI ¶ 1(a).)  It then defines "[t]he regular workday for all full-

time [e]mployees covered by this [CBA]" as "the number of hours in the regular work week as

above defined, divided by five (5) exclusive of an unpaid lunch period."  (*Id.* Art. XI ¶ 2.)  And

Article XIII sets forth in relevant part that "[e]mployees shall be paid one and one-half (1 ½)

times their regular rate for authorized time worked in excess of forty (40) hours within the work

week."  It further provides that employees shall receive time and one-half for authorized work

"in excess of thirty-seven and one-half (37.5) hours within the work week (or hours equivalent to

their regular work week if such exceeded thirty-seven and one-half (37.5) hours) if mandated for

at least one (1) hour during that work week."  (*Id.* Art. XIII ¶ 1(a).)

Third, Articles XXX–XXXI set forth the grievance and arbitration procedures for

disputes.  A "grievance" is defined as "a dispute or complaint arising between the

parties . . . under or out of this [CBA] or the interpretation, application, performance,

termination, or any alleged breach thereof."  (*Id.* Art. XXX ¶ 1.)  Article XXX then sets forth a

4

three-step procedure for the resolution of grievances. At the first step, an employee having a grievance, "and/or his/her Union delegate . . . shall take it up with [the employee's] immediate supervisor. The Employer shall give [an] answer to the Employee and/or his/her Union delegate . . . within ten (10) working days." (*Id.*) If the grievance is not settled at step one, the grievant may then present the grievance in "writing, signed by the grievant and his/her Union Representative" to the grievant's department head. (*Id.*) "A grievance so presented in [s]tep [two] shall be answered by the Employer in writing within five (5) working days . . . ." (*Id.*) If the grievance still remains unresolved, the grievant may proceed to step three by presenting the grievance to the Manager of Human Resources of the Employer, who shall "render a decision in writing within ten (10) working days . . . . Responses will be mailed to the grievant and the Union Representative." (*Id.*) Article XXX further states that "[a]ny disposition of a grievance from which no appeal is taken within the time limits specified herein shall be deemed resolved and shall not thereafter be considered subject to the grievance and arbitration provisions of this [CBA]." (*Id.* Art. XXX ¶ 3.) Article XXXI establishes "Arbitration" procedures:

> (1) A grievance, as defined in Article XXX, which has not been resolved thereunder may, within thirty (30) working days after completion of [s]tep [three] of the grievance procedure, be referred for arbitration by the Employer or the Union to an arbitrator selected in accordance with the procedures of the American Arbitration Association.
>
> . . .
>
> (3) The award of an arbitrator hereunder shall be final, conclusive and binding upon the Employer, the Union and the Employee.

(*Id.* Art. XXXI ¶¶ 1(1), (3).)

Moreover, in June and July 2012, *after Defendant removed this Action*, the Union and Defendant entered into a Memorandum of Agreement ("MOA") modifying the terms of

employment for respiratory therapists to account for the facts which are the gravamen of this dispute—i.e., that "the work performed by respiratory therapists is inherently unpredictable and that it is not always possible for [Defendant] to guarantee that each respiratory therapist receives an uninterrupted meal break during each shift." (Brenlla Aff. Ex. E ("MOA").) Specifically, the MOA modifies the CBA such that

> [t]he shift time for respiratory therapists shall be reduced from thirteen (13) hours to twelve and one half (12.5) hours per shift. Each shift shall include a paid meal break of thirty (30) minutes. In recognition of the fact that respiratory therapists are often not able to take an uninterrupted meal break, the parties agree that the shifts will be reduced by one half (½ hour) in exchange for the missed meal break.

(*Id.* ¶ 1.)[3]

B. Procedural History

Plaintiff styles his action as a class action, filed on behalf of

> [a]ll current and former respiratory therapists who are or were employed by Defendant [during the period commencing May 1, 2006, and continuing until such further dates as the practices complained of are or were discontinued ("the Class Period")] and who were (1) not compensated for all worked performed while on a meal and/or rest period; and (2) were not compensated for time worked over forty hours per week at overtime rates . . . .

(Compl. ¶ 10.) Plaintiff asserts three causes of action against Defendant in the Complaint. First, Plaintiff claims that Defendant violated N.Y. Labor Law §§ 190, 191, 193, 198, and 652, as well as New York Compilation of Codes, Rules, and Regulations, Title 12, § 142-3.1–.2, by "willfully fail[ing] to pay the correct wages and overtime pay due." (*Id.* ¶ 25; *see also id.* ¶¶ 26–31.) Second, Plaintiff claims that Defendant failed to pay the hourly wage respiratory therapists the minimum wage of $7.25 per hour as required by N.Y. Labor Law § 625 and

---

[3] As with the CBA, the Court will address the extent to which the MOA can be considered in resolving Defendant's Motion.

corresponding New York State Department of Labor Regulations.  (*See id.* ¶¶ 32–40.)  And finally, Plaintiff claims that Defendant failed to pay adequate overtime as required by N.Y. Labor Law §§ 650 et seq. and corresponding regulations.  (*See id.* ¶¶ 41–46.)

As noted, Plaintiff filed this action in state court.  Defendant filed a timely notice of removal.  (Dkt. No. 1.)  Defendant filed the instant Motion To Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) according to a scheduling order adopted by the Court on August 1, 2012.  (Dkt. No. 6.)[4]

## II. Discussion

### A. Standard of Review

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (third alteration in original) (citations omitted).  Instead, the Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563. Plaintiffs must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  But if a plaintiff has "not nudged [his or her] claims across the line from conceivable

---

[4] As discussed further below, it is unclear why Defendant invokes Federal Rule of Civil Procedure 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction. Indeed, Defendant removed the case to this Court on the basis that this Court possesses original jurisdiction over Plaintiff's claims.  (Dkt. No. 1).  The Court will therefore proceed as if Defendant is moving to dismiss exclusively pursuant to Federal Rule of Civil Procedure 12(b)(6).

to plausible, the[] complaint must be dismissed." *Id.*; *see also Aschroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

In considering Defendant's Motion To Dismiss, the Court is required to consider the factual allegations contained in the Complaint as true. *See Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)); *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) (same). Furthermore, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir.2007) (noting that a court's review of a Rule 12(b)(6) motion normally is "limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference").

The Parties appear to agree that the Court may consider the CBA and the MOA in considering Defendant's Motion To Dismiss. Indeed, there is some authority that supports this

8

view, particularly where, as here, the plaintiff does not contest the existence or the applicability

of such documents.  *See Severin v. Project Ohr, Inc.*, No. 10-CV-9696, 2011 WL 3902994, at *1

n.1 (S.D.N.Y. Sept. 2, 2011) (considering a CBA which was deemed "integral to the

[C]omplaint" (internal quotation marks omitted)); *see also McLean v. Garage Mgmt. Corp.*, No.

10-CV-3950, 2011 WL 1143003, at *1 n.1 (S.D.N.Y. Mar. 29, 2011) (considering CBA on

defendant's motion to dismiss, even though the document was not "referenced in or appended to

the Complaint," because the CBA was "integral to the complaint" and because "Plaintiffs [did]

not contest the existence of the CBA"); *Levy v. Verizon Info. Servs. Inc.*, 498 F. Supp. 2d 586,

593 (E.D.N.Y. 2007) ("Plaintiffs' careful avoidance of referencing [the CBAs, which]

are integral to the complaint[,] does not deprive the court of its power to review [the documents]

on a motion to dismiss.").

     However, in *Severin*, the court was considering, at least in part, a motion to dismiss for

lack of jurisdiction under Fed. R. Civ. P. 12(b)(1).  In deciding such a motion, courts regularly

consider matters outside the complaint.  *See State Emps. Bargaining Agent Coal. v. Rowland*,

494 F.3d 71, 77 n.4 (2d Cir. 2007).  Here, while Defendant cited Rule 12(b)(1), in addition to

Rule 12(b)(6), in its Motion, there is no real challenge to the Court's jurisdiction.  Indeed, as

noted, it was Defendant which asserted federal jurisdiction when it removed Plaintiff's state

court case.  Moreover, in its Memorandum of Law in support of the instant Motion, Defendant

does not explain why the case should be dismissed pursuant to Rule 12(b)(1), and at oral

argument, counsel for Defendant conceded that the reference to Rule 12(b)(1) "might have been

a mistake."  (Tr. of Hr'g (Sept. 23, 2013) at 13–14.)

     Moreover, the Second Circuit has recently made clear that it is inappropriate for a court

to consider a CBA in evaluating a motion to dismiss claims not dependent on the CBA and

where no facts about the CBA are alleged in a plaintiff's complaint. *See Nakahata v. N.Y.- Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202–03 (2d Cir. 2013) (reversing district court's judgment granting a Rule 12(b)(6) motion to dismiss where court considered a CBA that was not "pled or attached to the complaints"). This is so even where the defendant, as is true here, asserts that dismissal is appropriate because plaintiff's claims are preempted by the LMRA based on the existence of a CBA between plaintiff and defendant. *See id.* at 203 ("We cannot affirm the dismissal on the basis of LMRA preemption pursuant to Rule 12(b)(6) because such dismissal was premised on matter outside of the pleadings, and was, therefore, inappropriate.").[5] Nor was Plaintiff required to plead the CBA in his complaint. Plaintiff is the master of his complaint, and he may assert state law causes of action without reliance on the CBA. *See id.* (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394–95 (1987)). Put differently, the CBA is not "integral" to Plaintiff's causes of action. To the extent the CBA (and the MOA) might be relevant to Defendant's grounds for dismissal, it is "a defendant's responsibility to raise preemption by the CBA as a defense . . . ." *Id.*

Of course, the Court could consider the CBA and other materials related to it, if it converted the motion to one for summary judgment, under Fed. R. Civ. P. 56, *see* Fed.R.Civ.P. 12(d); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir.2002), but Defendant has made no such request and the Court is disinclined to convert the motion at this time, particularly because consideration of how the Parties operated under the CBA would require discovery. *See Wajilam Exps. (Sing.) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275, 278 (S.D.N.Y. 2006)

---

[5] Curiously, Defendant cited *Nakahata* at oral argument, though only noting that the district court had dismissed plaintiffs' state law claims on LMRA preemption grounds, based on a CBA, and neglecting to acknowledge that this ruling was reversed by the Second Circuit. (Tr. of Hr'g (Sept. 23, 2013) at 9.)

10

("Although conversion to a summary judgment motion is necessary where a court elects to consider matters outside the pleadings, the decision whether to convert is a matter for the court's discretion. . . . There would be little point in considering a summary judgment motion when significant relevant facts may yet be discovered.").  For example, Defendant has argued, both in its papers and at oral argument, that actual "practices" of Defendant in implementing the CBA were incorporated in the MOA, and that these practices, which included the payment of employees who worked through meal breaks, are relevant to Plaintiff's claims.  (Tr. of Hr'g (Sept. 23, 2013) at 5;  Def.'s Mem. of Law in Supp. of Its Mot. To Dismiss the Compl. ("Def.'s Mem.") 14–15.)  What these practices were, when they allegedly began, and how often they were carried out, are just among the questions that will require exploration in discovery.  Thus, the Court would be well within its authority to decline to consider the CBA and the MOA until this case reaches the summary judgment stage, and to deny Defendant's Motion on this basis alone.  *See Nakahata*, 723 F.3d at 203 ("It is a defendant's responsibility to raise preemption by the CBA as a defense, but . . . a motion addressed to the adequacy of the pleadings is not necessarily the proper place for preemption to be decided."); *Drake v. Lab. Corp. of Am. Holdings*, 458 F.3d 48, 66 (2d Cir. 2006) ("For those claims for which preemption cannot be easily determined from the pleadings, our standard of review requires us to affirm the district court's decision to deny the defendant-appellants' motion to dismiss, with the understanding that the claims may ultimately prove to be preempted at a later stage of the litigation." (citation omitted)).

Thus, because Defendant's Motion depends entirely on the CBA, (and the MOA), the Court could deny the motion on the sole ground that the CBA (and MOA) should not be considered at this stage.  However, as explained below, even if the Court considered the CBA, it

11

would still deny Defendant's motion because Plaintiff's state law claims are not preempted by

the LMRA.

    B. Analysis

        1. LMRA Preemption

    Defendant seeks dismissal of Plaintiff's claims on the basis that they are preempted by

§ 301 of the LMRA.  That provision states that "[s]uits for violation of contracts between an

employer and a labor organization representing employees in an industry affecting

commerce . . . may be brought in any district court in the United States having jurisdiction of the

parties . . . ."  29 U.S.C. § 185(a).  It is well established that § 301 is

> a congressional mandate to the federal courts to fashion a body of federal
> common law to be used to address disputes arising out of labor contracts.  Thus,
> when a state claim alleges a violation of a labor contract, the Supreme Court has
> held that such claim is preempted by section 301 and must instead be resolved by
> reference to federal law.

*Vera*, 335 F.3d at 114; *see also Severin*, 2011 WL 3902994, at *4 (same); *Levy*, 498 F. Supp. 2d

at 595–96 (same).  "Section 301 preempts not only claims directly alleging that a party has

violated a provision of a CBA, but also those state-law actions that require interpretation of the

terms of a CBA."  *McLean*, 2011 WL 1143003, at *2; *see also Vera*, 335 F.3d at 114 (explaining

that questions "'relating to what the parties to a labor agreement agreed, and what legal

consequences were intended to flow from breaches of that agreement, must be resolved by

reference to uniform federal law,'" and that where "'resolution of a state-law claim is

substantially dependent upon analysis of the terms of an agreement made between the parties in

a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted

by federal labor-contract law'" (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 220

(1985))); *Severin*, 2011 WL 3902994, at *4 (same); *Levy*, 498 F. Supp. 2d at 595–96 (same).

"Not every suit concerning employment or tangentially involving a CBA, however, is preempted by section 301." *Vera*, 335 F.3d at 114.  If a plaintiff brings an action to enforce a state law "rule[] or establishe[d] right[] [or] obligation[] that [is] independent of a labor contract," that claim is not preempted. *Id.* at 115.  Indeed, "[e]ven if resolving a dispute under a state law claim and the [CBA] would require addressing the precisely same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Severin*, 2011 WL 3902994, at *4 (some internal quotation marks omitted); *McLean*, 2011 WL 1143003, at *3 (same).  "Nor would a state claim be preempted if its application required mere referral to the CBA for information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled." *Vera*, 335 F.3d at 115 (internal quotation marks omitted); *see also Johnson v. D.M. Rothman Co.*, 861 F. Supp. 2d 326, 332 (S.D.N.Y. 2012) ("For example, § 301 does not mandate preemption of state law claims requiring mere referral to a CBA to determine damages owed." (internal quotation marks omitted)); *McLean*, 2011 WL 1143003, at *3 (same); *Levy*, 498 F. Supp. 2d at 596 (same).

The Second Circuit has cautioned that "[t]he boundary between claims requiring interpretation of a CBA and ones that merely require such an agreement to be consulted is elusive." *Vera*, 335 F.3d at 115 (alteration in original) (internal quotation marks omitted); *see also, e.g.*, *Ferrara v. Leticia, Inc.* No. 09-CV-3032, 2012 WL 4344164, at *3 (E.D.N.Y. Sept. 21, 2012) (same).  One district court has attempted to clarify this "elusive" line by crafting a two-part test to determine whether a claim is preempted:  "First, a court must analyze the 'legal character' of the claim and whether it is truly independent of rights under the [CBA].  The starting point in making such a determination is consideration of the elements of [plaintiff's]

13

stated claims." *Levy*, 498 F. Supp. 2d at 596 (citations omitted).  "Second, even if the right exists independently of the CBA, the court must still consider whether it is nevertheless substantially dependent on analysis of a [CBA].  If such dependence exists, the claim is preempted by § 301 . . . ." *Id.* (citations and internal quotation marks omitted).

At the outset, Defendant does not argue—and the Court cannot see how Defendant could argue—that the CBA, which Defendant and the Union entered into on January 1, 2008, preempts Plaintiff's claims with respect to Defendant's alleged failure to make payments in accordance with N.Y. Labor Law and corresponding regulations between May 1, 2006 (the beginning of the purported class period), (Compl. ¶¶ 1, 10, 21–22), and January 1, 2008 (the date when the CBA became operative).  Plaintiff's claims arising from this time period are necessarily independent from, and do not require interpretation of, the CBA.  Defendant's Motion therefore must be denied at least insofar as Plaintiff's claims involve Defendant's conduct prior to January 1, 2008. *See Levy*, 498 F. Supp. 2d at 599 ("[Section] 301 of the LMRA has no application in the absence of a currently effective CBA.  Indeed, § 301's sweeping preemptive force applies only where state law claims coincide with *current* collective bargaining agreements." (emphasis in original) (internal quotation marks omitted)).

With respect to the balance of Plaintiff's claims, it appears to be well settled that claims pursuant to N.Y. Labor Law are "truly independent of rights under the [CBA]." *Id.* at 596–97 (finding that plaintiff's claims for unlawful wage deductions under N.Y. Labor Law "derive from rights conferred as a matter of state law, not from the CBAs" and, consequently, that the "state law claims exist independently of the CBAs at issue . . . [and] are not, under the first prong of the court's § 301 analysis, subject to preemption"); *see also Severin*, 2011 WL 3902994 at *4 ("Plaintiffs' NYLL claims are legally independent of the CBA . . . ."); *McLean*, 2011 WL

14

1143003 at *3 (same).  Indeed, Defendant does not argue otherwise.

The more "elusive" question is the second-prong question:  Do Plaintiff's claims require "mere referral" to, or  "substantial interpretation" of, the CBA?  If the former, Plaintiff's claims are not preempted; if the latter, they are.  Based on the pleadings and without further factual development, the Court concludes that Plaintiff's claims ultimately will require only referral to the CBA, and accordingly denies Defendant's Motion.

Plaintiff's claims here are virtually identical to plaintiffs' claims in *Polanco v. Brookdale Hospital Medical Center*, 819 F. Supp. 2d 129 (E.D.N.Y. 2011).  There, as here, "[p]laintiffs allege[d] that they worked during their lunch period and after regular hours, and that they were not paid for this work."  *Id.* at 134; *see also id.* at 131–32 (explaining that plaintiffs were employed respectively as "a full-time ward clerk" and "as a full-time operating room technician," by defendant medical center, that plaintiffs "typically worked eight hour shifts, with half an hour designated as a lunch break," and that plaintiffs "frequently worked during their lunch periods and after the end of their shifts in order to complete all of their assigned tasks, on average, approximately 45 hours per week[,] [but] [d]efendants . . . only paid plaintiffs for forty hours of work per week").  Judge Weinstein explained that plaintiff's allegations, if proven, were sufficient to "establish a violation of an independent statutory right arising under the NYLL." *Id.* at 134.  Moreover, he explained, "[a]lthough the CBA may provide *additional rights to the employees, it may not override independent statutory rights provided by the NYLL.*"  *Id.* (emphasis added).  Judge Weinstein further explained that "[e]ven if the CBA contain[ed] provisions and rights regarding 'after hour' work identical to those in the NYLL, such 'parallelism' [did] not mandate preemption."  *Id.* (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 408 (1988)).

15

Plaintiff's claims also are similar in substance to the claims at issue in the tandem cases of *Severin* and *McLean*.   In those cases, Judge Cote found that the respective plaintiffs' claims for failure to pay minimum wage under N.Y. Labor Law § 652(a), and claims for overtime under corresponding regulation § 142-2.2, were not preempted, because such claims could be resolved without recourse to the underlying CBAs.  *See Severin*, 2011 WL 3902994 at *4 ("No provision of the CBA needs to be interpreted to decide either of these statutory claims."); *McLean*, 2011 WL 1143003 at *3 ("Plaintiffs do not seek to enforce any provision of the CBA.  Rather, plaintiffs' claims arise wholly under state law.").  Indeed, Plaintiff here, like the plaintiffs in *McLean*, "may prevail on [his] state law claims regardless of whether the defendants[] paid [him] in the manner provided by the CBA," *McLean*, 2011 WL 1143003, at *4, because N.Y. Labor Law §663 creates a private cause of action to enforce the rights created under the Labor Law and corresponding regulations, and the existence of, and Defendant's compliance with, the CBA is "no defense to such action."  N.Y. Labor Law § 663.

Moreover, those cases in which plaintiffs' claims have been preempted under § 301 fall into three categories: first, cases in which a plaintiff alleges that defendant violated the CBA itself, *see Tand v. Solomon Schechter Day Sch. of Nassau Cnty.*, 324 F. Supp. 2d 379, 383 (E.D.N.Y. 2004) (holding that plaintiff's claim that defendant's "notification of nonreappointment . . . was untimely *under the terms of the CBA and therefore a breach of the CBA*" was preempted under § 301 (emphasis added) (brackets and internal quotation marks omitted)); *Ellis v. HarperCollins Publishers, Inc.*, No. 99-CV-12123, 2000 WL 802900, at *2 (S.D.N.Y. June 21, 2000) ("Because the reported violation [of N.Y. Labor Law § 191(1)(d)] is based on a failure to pay union employees *in accordance with the terms of a CBA*, however, this violation is preempted by Section 301 of the [LMRA].");  second, cases in which a plaintiff

16

claims that a provision of the CBA itself violates state law, *see Vera*, 335 F.3d at 112

("Plaintiff . . . alleg[es] that the unidentified returns policy as set forth in the CBA and

defendant's actions in compliance with this policy violate New York Labor Law section 193 and

the common law."); *id* at 115–16 ("[P]laintiff's complaint challenges the legality of a term of the

CBA, namely, the unidentified returns provision. . . . [P]laintiff's challenge to the lawfulness of a

term of the CBA will require substantial interpretation of the CBA."); *accord Medrano v. Excel

Corp.*, 985 F.2d 230, 234 (5th Cir. 1993) (finding that where plaintiff was "essentially

challenging the very legality" of a provision of the CBA, "which [defendant] had faithfully

applied," plaintiff's claim was, "without a doubt . . . substantially dependent upon the meaning

of a term of the CBA" and thus preempted); and, third, cases in which a CBA provision relevant

to the plaintiff's claim is ambiguous, *see Johnson*, 861 F. Supp. 2d at 333 (preempting state law

claims, the resolution of which depended on resolving a dispute as to whether plaintiffs qualified

as "'Hi-Lo Operators' or 'grandfather employees' as those terms [we]re used in the CBA, and

the plain language of the CBA [did] not indicate a clear answer," but not preempting other

claims, because "the meaning of [the] plain language" of the relevant CBA provision was

"clear"); *Salamea v. Macy's E., Inc.*, 426 F. Supp. 2d 149, 155 (S.D.N.Y. 2006) (preempting

state law claims, because "the CBA contain[ed] detailed requirements for an employee to be

eligible for vacation benefits," and the parties "dispute[d] as to whether [plaintiff] was entitled to

the ten vacation days taken, and whether she followed the appropriate procedures for scheduling

her vacation to make her eligible for vacation pay").

       This case does not fall into the first category, because Plaintiff does not allege a violation

of the CBA.  To be sure, Plaintiff *could have alleged* that Defendant violated the CBA by failing

to pay him and other respiratory therapists full wages, including time and a half for overtime

hours they worked.  As noted, Article XIII of the CBA sets forth in relevant part that "[e]mployees shall be paid one and one-half (1 ½) times their regular rate for authorized time worked in excess of forty (40) hours within the work week."  (CBA Art. XIII ¶ 1(a).)  New York State Department of Labor Regulations codify the same right to overtime compensation.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-3.2 ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate . . . [for] working time over . . . . 40 hours").  But the fact that Plaintiff could have asserted his claims under the CBA does not, without more, require preemption of those claims.  *See Severin*, 2011 WL 3902994, at *4 ("Even if resolving a dispute under a state law claim and the [CBA] would require addressing the precisely same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is independent of the agreement for § 301 pre-emption purposes." (internal quotation marks omitted)); *Polanco*, 819 F. Supp. 2d at 134 ("Regardless of whether the facts alleged by plaintiffs constitute a violation of the CBA, they may also make out an independent claim under Article 19 of the NYLL.").[6]  The case also does

---

[6] As noted, under the CBA, some of Defendant's employees, under certain circumstances, are actually entitled to receive time and a half for hours worked in excess of thirty-seven and one-half hours within the work week:  Specifically, if their "regular work week" is thirty-seven and one-half hours, and if the excess hours worked in a given week were "mandated for at least one (1) hour during that work week."  (CBA Art. XIII ¶ 1(a).)  But the Parties do not dispute—and the Court therefore need not interpret the CBA to determine—whether hourly wage respiratory therapists such as Plaintiff are entitled, under the CBA, to overtime either for their work in excess of thirty-seven and one-half hours or for their work in excess of forty hours.  Moreover, Defendant states "[n]otably, overtime pay for Plaintiff under the CBA can be paid for time worked in excess of 37.5 or 40 hours, a calculation not parallel to the statutory requirement."  (Def.'s Mem. at 13–14.)  But the possibility that Plaintiff could have sought overtime for hours worked in excess of thirty-seven and one-half hours underscores that Plaintiff's state law claim for overtime wages for his work in excess of forty hours per week, (Compl. ¶¶ 41–46), is independent from the CBA.  *See Alderman v. 21 Club Inc.*, 733 F. Supp. 2d 461, 468–69 (S.D.N.Y. 2010) (holding that plaintiff's claims were not preempted, because while "[b]oth [New York state law] and the CBA [gave] employees rights in

not fall into the second category—i.e., this is not a case, so far as the Court can tell at this stage in the proceedings (or so far as Defendant has argued), in which Plaintiff is arguing that a provision of the CBA violates state law.

Finally, this case does not fall into the third category—i.e., cases in which a relevant CBA provision is ambiguous—because Defendant has not identified specific provisions of the CBA that must be interpreted to resolve Plaintiff's claims.  As noted, the Court is required to take Plaintiff's allegations as true for the purpose of ruling on the instant Motion.  Plaintiff has alleged, among other things, that over the course of his employment with Defendant he "worked an average of 1.5 hours per week during meal and/or rest periods without compensation" and that this work was not counted toward his overtime hours, such that he was not credited full overtime pay.  (Compl. ¶ 6.)  Defendant does not contest that these allegations are sufficient to plead claims under New York Labor Law for unpaid wages and overtime, and, because respiratory therapists are hourly wage workers, that proposition should hold regardless of how many hours are in a shift, or how many shifts are in a work week. Plaintiff's claims therefore survive preemption.  *See McLean*, 2011 WL 1143003, at *4 (finding that plaintiffs' claims for wages under N.Y. Labor Law were not preempted, because plaintiffs could prevail "on their state law claims regardless of whether the defendants[] paid them in the manner provided in the CBA")

Defendant's arguments regarding the CBA and MOA are inadequately developed and premature.  The CBA provisions cited by Defendant as sources of ambiguity are actually straightforward and unambiguous.  Article X and Stipulation II set forth the rates of pay for

---

respect to gratuities," those rights were different in scope, and plaintiff was not seeking to enforce his CBA gratuities rights).

respiratory therapists, Article XI defines how to measure "[t]he regular work week" and "[t]he regular work day"—the latter of which is "exclusive of an unpaid lunch period," and Article XIII, discussed above, establishes a rate of overtime pay for hours worked in excess of forty hours or thirty-seven and one-half hour.  (CBA Arts. X, XI, XIII.)   Defendant argues that the Court cannot "determine what wages Plaintiff earned and whether he was properly paid under the New York Labor Law . . . without reference to and interpreting [sic] the CBA.  (Def.'s Mem. 12.)  But Defendant does not explain what there is to interpret from the CBA, as the rates-of-pay and work-week provisions are straightforward.  At most, these provisions will need to be merely referenced in resolving Plaintiff's state law claims, and, as noted, such referral is not inconsistent with the LMRA.  *See Vera*, 335 F.3d at 115 ("Nor would a state claim be preempted if its application required mere referral to the CBA for information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled." (internal quotation marks omitted)); *Johnson*, 861 F. Supp. 2d at 332 ("For example, § 301 does not mandate preemption of state law claims requiring mere referral to a CBA to determine damages owed." (internal quotation marks omitted)).

Additionally, Defendant places too much reliance on the MOA.  (*See* Def.'s Mem. 12–14.)  First, the MOA was entered into, at the earliest, on June 11, 2012, which post-dates Defendant's removal on June 4, 2012.[7]  Yet, the Court is to evaluate jurisdiction at the time of the removal.  *See Keenan v. Macy's, Inc.*, No. 10-CV-4672, 2010 WL 3167731, at *2 (S.D.N.Y. Aug. 9, 2010) (noting that a court examining the propriety of removal is to evaluate any "jurisdictional fact[] on the basis of the pleadings, viewed at the time when the defendant files

_____

[7]Actually, the MOA was not fully executed until July 10, 2012, when Defendant's representative executed it.  (Brenlla Aff. Ex. E.)

the notice of removal") (quoting *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006));

*see also Vera*, 335 F.3d at 116 n.2 (evaluating "a defendant's right to remove a case to federal

court at the time the removal notice [was] filed" by refusing to consider plaintiff's post-removal

disavowal of a reference to a CBA provision in the Complaint).  Therefore, because the MOA

did not even exist at the time Defendant's removal was filed, it cannot be the hook for

jurisdiction in this Court.  Moreover, there can be no preemption claim arising from the MOA, as

it post-dates the allegedly improper conduct that forms the basis of Plaintiffs' claim for damages.

*See Levy*, 498 F. Supp. 2d at 599 ("[Section] 301 of the LMRA has no application in the absence

of a currently effective CBA.  Indeed, § 301's sweeping preemptive force applies only where

state law claims coincide with *current* collective bargaining agreements." (emphasis in original)

(citation and internal quotation marks omitted)).

 Second, the operation of the MOA as a reflection of past practices is precisely the type of

fact dispute that defeats this Motion, which is addressed only to Plaintiff's pleadings.  Defendant

argues that the CBA and the MOA incorporate Defendant's past "practice . . . to pay employees

for their meal period if they are unable to take such time uninterrupted" by allowing such

employees "to swipe 'No Lunch' and subsequently" receive payment for their hours worked

during their breaks.  (Brenlla Aff. Ex. D (Defendant's step-three denial letter in response to

Plaintiff's class grievance).)  According to Defendant, the Court would have to interpret

Defendant's "No Lunch" past practices in evaluating Plaintiff's state law claims.  However, the

substantive merits of this argument will need to be resolved at a later stage in the litigation.

 Also, even if the Court could consider the CBA and the MOA as incorporated into

Plaintiff's Complaint, Defendant makes no argument as to why a step-three denial letter is also

"integral to the [C]omplaint," *Severin*, 2011 WL 3902994, at *1 n.1 (internal quotation marks

omitted); *see also McLean*, 2011 WL 1143003, at *1 n.1 (same).  Indeed, this letter appears to be the classic example of factual matter beyond the scope of review on a Motion To Dismiss.  *See Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (finding that "the district court . . . erred in dismissing plaintiff's complaint" by, inter alia, considering materials outside the pleadings, including "exhibits submitted by defendants" and "factual allegations contained in legal briefs or memoranda" (internal quotation marks omitted)); *Alston v. 1749–1753 First Ave. Garage Corp.*, No. 12-CV-2676, 2013 WL 3340484, at *3 (E.D.N.Y. July 2, 2013) (collecting cases for the proposition that "[i]t is also improper for a court to consider declarations and affidavits on a motion to dismiss" (internal quotation marks omitted)).  Furthermore, even if the Court found that the denial letter itself is "integral" to Plaintiff's Complaint, the letter merely acknowledges the existence of a prior practice.  Without more factual development, however, the Court cannot say whether Defendant's past practice qualifies as part of the CBA, *see Otis Elevator Co. v. Local 1, Int'l Union of Elevator Constructors*, No. 03-CV-8862, 2005 WL 2385849, at *6 (S.D.N.Y. Sept. 23, 2005) (noting that a CBA may be interpreted "in light of the parties' intent revealed through," among other things, "past practices" (quoting *Local 1199, Drug, Hosp. & Health Care Emps. Union, RWDSU v. Brooks Drug Co.*, 956 F.2d 22, 26 (2d Cir. 1992))); *see also Bozetarnik v. Mahland*, 195 F.3d 77, 82 (2d Cir. 1999) (explaining that "past practices" become part of a collective bargaining agreement when they have "ripened into an established and recognized custom between the parties" (internal quotation marks omitted)), or, if so, that the resolution of Plaintiff's claims would require interpretation of Defendant's past practices to see if Plaintiff followed the necessary procedures to request pay for work performed during meal hours, *cf. Salamea*, 426 F. Supp. 2d at 155 (finding plaintiff's claim for vacation pay pursuant to N.Y. Labor Law was preempted, because the claim required the court to determine if

22

plaintiff had "followed the appropriate [CBA] procedures . . . to make her eligible for vacation pay").[8]  Defendant could, in theory, renew this argument as a basis for preemption on a later motion for summary judgment.  *See Johnson*, 861 F. Supp. 2d at 332–33 (finding that Defendant was "entitled to *summary judgment as a matter of law* on Plaintiffs' state . . . overtime claims," because those claims were preempted by § 301 of the LMRA (emphasis added)).  In the meantime, it suffices to say that Defendant's challenge to Plaintiff's Complaint is without merit.

### 2. Grievance and Arbitration Procedures

Defendant argues that Plaintiff was required to exhaust the grievance and arbitration procedures in the CBA before seeking judicial relief.  Defendant's argument fails, however, because, as the Court has explained, Plaintiff's claims are not governed by the CBA.

Here too, the Court finds Judge Cote's decision in *McLean* instructive.  Like the claims at issue in *McLean*, Plaintiff's N.Y. Labor Law claims here are certainly "susceptible to arbitration."  2011 WL 1143003 at *4.  But that is not the end of the inquiry.  "Where statutory claims are susceptible to arbitration, the next inquiry is whether the parties intended to arbitrate

---

[8] The Court further notes that in this regard, *Salamea* and *McLean* appear to represent a distinction between two types of claims, one that is preempted and one that is not.  In *Salamea*, the plaintiff claimed that her employer failed to pay her "accrued vacation pay." *Salamea*, 426 F. Supp. 2d at 154–55.  Although she pled her claim under New York Labor Law § 198, the court held that it was preempted because her claim for non-payment of a *benefit* provided by the CBA required interpretation of the CBA.  *See id.* at 155 (holding that "a dispute as to whether [plaintiff] was *entitled* to the ten vacation days taken, and whether she followed the appropriate procedures . . . to make her eligible for vacation pay. . . . require[d] interpretation of the CBA" (emphasis added)).  By contrast, in *McLean*, the plaintiffs claimed that their employers failed to pay them "for all hours worked" and for overtime hours worked.  2011 WL 1143003, at *3.  Because the court held that these claims for non-payment of *hours worked* "ar[o]se wholly under state law," the claims were "legally independent of the CBA" and were thus not preempted.  *Id.* If Defendant renews its preemption argument on a subsequent motion for summary judgment, the Parties will need to address whether Plaintiff's claims require a determination of Plaintiff's compliance with any CBA procedures—such as the "No Lunch" practice to receive payment for hours worked—in order to resolve Plaintiff's entitlement to any unpaid wages.

such claims, as indicated by the terms of their agreement to arbitrate, in this case the CBA." *Id.*

Furthermore, when a dispute concerns the enforcement of a federal statutory right—and, by

extension, a state statutory right, *id.* at *5 (explaining that, in this context, "there is no basis to

distinguish between claims arising under state and federal statutes")—"arbitration will only be

compelled if 'clearly and unmistakably' chosen by the parties," *id.* (quoting *Wright v. Universal*

*Mar. Serv. Corp.*, 525 U.S. 70, 82 (1998)); *see also 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247,

251 (2009) (same). Courts in the Second Circuit will find that a CBA "clearly and

unmistakably" encompasses statutory claims if either of two conditions is met:

> First, a [union] waiver [to a federal forum for statutory claims] is sufficiently
> explicit if the arbitration clause contains a provision whereby employees
> *specifically agree to submit all federal causes of action* arising out of their
> employment to arbitration. . . . Second, [such] a waiver may be sufficiently clear
> and unmistakable when the CBA contains an *explicit incorporation of the*
> *statutory . . . requirements* in addition to a broad and general arbitration clause.
> Courts agree that *specific incorporation requires identifying the . . . statutes by*
> *name or citation*.

*McLean*, 2011 WL 1143003, at *5 (emphasis in original) (quoting *Rogers v. N.Y. Univ.*, 220

F.3d 73, 76 (2d Cir. 2000) (per curiam)); *see also Quintanilla v. Suffolk Paving Corp.*, No. 09-

CV-5331, 2011 WL 1323033, at *3 (E.D.N.Y. Feb. 10, 2011) (same), *adopted by* 2011 WL

1253248, at *1 (E.D.N.Y. Mar. 28, 2011); *Alderman*, 733 F. Supp. 2d at 469 (same).

The arbitration clause at issue in the CBA does not clearly and unmistakably encompass

Plaintiff's N.Y. Labor Law claims. Like the CBAs at issue in *McLean* and *Alderman*, the

arbitration provision at issue here governs any "dispute or complaint arising between the

parties . . . under or out of this [CBA] or the interpretation, application, performance,

termination, or any alleged breach thereof," (CBA Art. XXX ¶ 1). *See McLean*, 2011 WL

1143003, at *5 (describing that the CBA requires "arbitration of disputes regarding the

interpretation or application of a particular clause of the CBA or an alleged violation of a

particular provision of the CBA" (brackets, ellipsis, and internal quotation marks omitted));

*Alderman*, 733 F. Supp. 2d at 470 ("The CBA at issue here states that '[a]ll disputes concerning

the application, interpretation or construction of this Agreement, or any of its terms, conditions

or provisions' must proceed through the grievance procedures and, if the dispute is unable to be

resolved, it 'may be submitted to arbitration.'" (alterations in original)).  And also like the CBAs

at issue in *McLean* and *Alderman*, the arbitration provision at issue here "does *not* provide that

all" statutory causes of action arising from Plaintiff's employment "will be subject to arbitration,

nor does it explicitly incorporate the requirements of the . . . [N.Y. Labor Law]."  *McLean*, 2011

WL 1143003, at *5 (emphasis in original) (brackets and internal quotation marks omitted)); *see*

*also Alderman*, 733 F. Supp. 2d at 470 ("The provisions in the CBA do not expressly specify that

all disputes, including those arising under federal law, are subject to arbitration.  Moreover, the

CBA does not name or incorporate the FLSA into the arbitration clause.").  "As such, the

provisions of the CBA are too broad and general to demonstrate the requisite 'clear and

unmistakable' intent to submit all . . . statutory claims to arbitration."  *Alderman*, 733 F. Supp.

2d at 470; *see also Quintanilla*, 2011 WL 1323033, at *4 ("Arbitration clauses . . . which cover

any dispute concerning the interpretation, application or claimed violation of a specific term or

provision of the CBA have been found not to contain the requisite clear and unmistakable waiver

. . . ." (internal quotation marks omitted)).

        The line of cases on which Defendant relies is not to the contrary.  Indeed, the cases on

which Defendant relies stand for the proposition that where a plaintiff's federal or state statutory

claims are preempted because they require interpretation of the underlying CBA, then a plaintiff

must exhaust the CBA's grievance and arbitration procedures before seeking judicial relief.  *See*

*Vera*, 335 F.3d at 117–18 (explaining that a CBA's arbitration provision should be interpreted broadly where a plaintiff's non-statutory claims "implicate[] issues of contract construction or the parties' rights and obligations under it" (internal quotation marks omitted)); *Hoops v. Keyspan Energy*, 822 F. Supp. 2d 301, 306–07 (E.D.N.Y. 2011) (explaining that arbitration is required where a plaintiff's statutory claims "hinge[] on his [or her] contractual right[s]," as opposed to where a plaintiff pursues a purely statutory right); *Tand*, 324 F. Supp. 2d at 382 (holding that because "the plaintiff[']s claims are covered by the CBA . . ., the [plaintiff] was compelled to use the contractual grievance and arbitration remedies provided for in the agreement").  The Court has already explained, however, that Plaintiff's claims are not preempted, because the Court should not be considering the CBA at this stage, and even if the CBA should be part of the analysis, Plaintiff's claims do not clearly require substantial interpretation of the CBA's provisions.

Defendant separately suggests that Plaintiff should be bound to arbitrate his claims according to the CBA's arbitration provision, because the Union, indeed Plaintiff himself, submitted the facts underlying this suit—i.e., the underpayment of respiratory therapists, due to their working during meal times—as a grievance and followed the three-step grievance procedures specified in the CBA.  (*See* Brenlla Aff. Ex. D (Defendant's step-three denial letter in response to Plaintiff's class grievance).)  This argument is unpersuasive.  The Court has found no decisions, and Defendant has cited none, in which a plaintiff initially sought to enforce a contractual right, then filed lawsuit seeking to vindicate a similar statutory right, and the reviewing court concluded that the plaintiff's initial action precluded the suit.  This omission in the case law is glaring, because, as Judge Cote noted in *Severin*, the same factual circumstances can often give rise to both a CBA violation and a violation of a substantive state law.  *See* 2011

26

WL 3902994, at *4 ("Even if resolving a dispute under a state law claim and the [CBA] would require addressing the precisely same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is independent of the agreement for § 301 purposes." (internal quotation marks omitted)).  Moreover, Defendant has not argued that a rule requiring an aggrieved employee to choose a single avenue of relief at the outset of a labor dispute would further either public-policy purpose relevant to § 301 preemption: the policy of promoting uniformity of federal labor law, *see Vera*, 335 F.3d at 114 (explaining that "[f]ederal law preempts . . . state [law] claims to further the federal goal of developing a uniform federal common law to govern labor disputes, lest common terms in bargaining agreements be given different and potentially inconsistent interpretations in different jurisdictions" (internal quotation marks omitted)), or the "liberal federal policy favoring arbitration agreements," which "requires courts to enforce agreements to arbitrate according to their terms," *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012) (internal quotation marks omitted).  And absent either doctrinal support or some persuasive public-policy justification, the Court is unwilling to establish such a rule here.

### III. Conclusion

For the reasons stated herein, Defendant's Motion To Dismiss Plaintiff's claims as

preempted by § 301 of the LMRA is denied without prejudice. The Clerk of Court is

respectfully directed to terminate the pending Motion, (Dkt. No. 7.)[9]


SO ORDERED.

Dated:      White Plains, New York
            September 30 , 2013

                                    KENNETH M. KARAS
                                    UNITED STATES DISTRICT JUDGE

---

[9] The Parties did not address whether the Court would continue to possess original
jurisdiction over this action in the event that the Court found Defendant's preemption argument
to be unpersuasive. *See Baldracchi v. Pratt & Whitney Aircraft Div., United Techs. Corp.*, 814
F.2d 102, 103 (2d Cir. 1987) ("Because we believe that Baldracchi's action is not preempted by
section 301 of the LMRA, we reverse and remand with instructions to remand to the state
court."); *Vlaskamp v. Eldridge*, No. 01-CV-7348, 2001 WL 1607065, at *1 (S.D.N.Y. Dec. 17,
2001) ("For the reasons that follow, we now hold that we do not have jurisdiction pursuant to
Section 301 of the LMRA and therefore, we remand this case to state court."). Moreover,
Plaintiff did not cross move to remand, *see Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*,
No. 11-CV-4141, 2013 WL 2359493, at *4 (S.D.N.Y. May 30, 2013) (explaining that there are
no timeliness restrictions on a motion to remand for lack of subject matter jurisdiction), and
Defendant did not provide an alternative basis for this Court's continuing jurisdiction. The
Parties should therefore submit letter briefs, not to exceed three single-spaced pages, advising
the Court of whether the action should be remanded for lack of subject matter jurisdiction.
These letters are due within one week of the date of this Opinion.